**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| SERGIO ROJAS, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 10-cv-05260 |
| v. | ) ) ) | |
| CAREER EDUCATION CORPORATION, a Delaware Corporation. | ) ) ) ) | Judge: Virginia M. Kendall |
| *Defendant*. | ) ) | |

---

**PLAINTIFF'S UNCONTESTED MOTION & MEMORANDUM IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

Jay Edelson
Myles McGuire
Ryan D. Andrews
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite. 1300
Chicago, Illinois 60654

*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     NATURE OF THE LITIGATION ............................................................................ 2

        A.      Plaintiffs' Allegations & the Litigation History ......................................... 2

        B.      Settlement Discussions and Private Mediation ........................................... 4

III.    TERMS OF THE SETTLEMENT ........................................................................... 4

        A.      Class Definition .......................................................................................... 4

        B.      Monetary Relief .......................................................................................... 5

        C.      Additional Relief ........................................................................................ 5

                1.      Injunctive Relief ............................................................................ 5

                2.      Payment of Notice and Settlement Administrative Expenses ...............5

                3.      Incentive Award for Plaintiffs as Class Representatives ........................ 5

                4.      Payment of Attorneys' Fees and Expenses ..................................... 6

        D.      Release of Liability .................................................................................... 6

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ...................... 6

        A.      There is a Sufficiently Numerous and Ascertainable Class ................................ 7

        B.      The Requirement of Commonality is Satisfied ........................................... 8

        C.      The Requirement of Typicality is Satisfied ................................................ 9

        D.      The Requirement of Adequate Representation is Satisfied ................................. 10

        E.      The Settlement Meets the Requirements of Rule 23(b)(3) ......................... 12

                1.      Common Questions of Law and Fact Predominate ....................... 12

                2.      This Class Action is a Superior Method of Adjudication ................... 13

V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ......... 14

VI.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...... 15

VII.    THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED ..................... 19

i

**VIII.   CONCLUSION**................................................................................................................21

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .............................................................6, 10, 12, 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ...................................................................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................................8, 12

**United States Circuit Court of Appeals Cases:**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ..........15, 16

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) .......................................................................7

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) .......................................................................15

*Harper v. Sheriff of Cook Co.*, 581 F.3d 511 (7th Cir. 2009) ......................................................7

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) ...............................................13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .................................................................................16

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) .............................................................................8

*Lemon v. International Union of Operating Eng'g, Local No. 139, AFL-CIO,*
   216 F.3d 577 (7th Cir. 2000) ..................................................................................... 12-13

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ....................................................13

*Pella Corp. v. Saltzman,* 606 F.3d 391 (7th Cir. 2010) ................................................................7

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) .........................9, 10

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir.1992) ......................................................................8

*Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012) ...........................................................9

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)................................16

**United States District Court Cases:**

*Brieger v. Tellabs, Inc.*, 245 F.R.D. 345 (N.D. Ill. 2007) .............................................................10

*Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336,
   2011 WL 2708399 (N.D. Ill. July 12, 2011).....................................................................13

*CE Design v. Beaty Const., Inc.,* No. 07 C 3340,
   2009 WL 192481 (N.D. Ill. Jan. 26, 2009).........................................................10, 11, 13

*CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) .........................10, 14

*Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625,
    2005 WL 2171168 (N.D. Ill. Aug. 30, 2005) ............................................................ 11-12

*Cotton v. Asset Acceptance, LLC*, No. 07 C 5005,
    2008 WL 2561103 (N.D. Ill. June 26, 2008) ................................................................12

*Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328 (N.D. Ill. 2006) .......................................9

*G.M. Sign, Inc. v. Group C Communications, Inc.*, No. 08-cv-4521,
    2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ...................................................................14

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008).................8, 9, 11, 14

*Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) ...........................10

*In re AT&T Mobility Wireless Data Serv. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) .................................................................7, 11, 16, 17

*Kessler v. Am. Resorts Int'l*, 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007)...............16

*Ross v. RBS Citizens, N.A.*, 09 CV 5695, 2010 WL 3980113 (N.D. Ill. Oct. 8, 2010)................10

*Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323 (N.D. Ill. 2010) ...........................7

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) ................................16, 18

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139 (N.D. Ill. 2010)....................8

*Targin Sign Systems, Inc. v. Preferred Chiropractic Center, LTD.*,
    679 F. Supp. 2d 894 (N.D. Ill. 2010) ...........................................................................14

*Vodak v. City of Chicago*, 03 C 2463, 2006 WL 1037151 (N.D. Ill. Apr. 17, 2006) ...................11

*Wright-Gray v. Hamos*, 09 C 04414, 2012 WL 366597 (N.D. Ill. Feb. 2, 2012)....................9-10

## **Statutory Provisions:**

Fed. R. Civ. P. 23.............................................................................................*passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*.................................................1, 9

## **Miscellaneous Authorities:**

Newberg on Class Actions § 11.25 (4th ed. 2002) ........................................................15, 17

*Manual for Complex Litigation* (Fourth) § 21.632 ................................................................6, 15

## I.        INTRODUCTION

The ubiquity of cellular phones and the evolution of wireless technology have made the

targeted solicitation of consumers easier for companies seeking to promote their products.

Where once telemarketers had to place calls to the "landlines" of potential consumers, the advent

of the text message[1] has streamlined the process, providing a means by which an ad can be sent

to a devices most American carry near their person at all times.  Text message advertising has

given rise to text message spam, with a recent Pew Research Center Report finding that 57% of

adults with cell phones have received unwanted or spam text messages on their phone.[2]  This

proposed class action settlement concerns allegations that Defendant Career Education

Corporation ("Defendant" or "CEC") transmitted unauthorized text messages to consumers'

cellular phones, advertising its educational products and services in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

As the Court's scheduled discovery cut-off approached—and with the depositions

scheduled—the Parties began to seriously discuss the possibility of settlement and agreed to

attempt to resolve both this case and the Related Action[3] through private mediation with the

Honorable Wayne R. Andersen (Ret.).  Only after engaging in two full-day mediations with

Judge Andersen and several months of continuing negotiations over the particular terms of their

---

[1] Text messaging—also known as "SMS," or "Short Message Service"—is a messaging system that in normal use allows cellular telephones to send and receive short text messages, usually limited to 160 or so characters, on their cellular telephones.  A text message call, when directed to a cell phone through the use of the telephone number assigned to the device, causes the phone to ring or otherwise alert the called party that a text message has been received.

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010).

[3] Capitalized terms such as "Related Action" have the same definition as those terms are used in the Class Action Settlement Agreement.  Here, the Related Action refers to *Fahey v. Career Education Corp.*, No. 10-cv-5635 (N.D. Ill.).

compromise were the Parties able to arrive at the instant Settlement Agreement, a copy of which is attached hereto as Exhibit 1.

The proposed settlement will provide the Settlement Class with substantial monetary relief and the injunctive measures necessary to ensure that neither CEC nor its agents transmits similar text messages ads that are violative of the TCPA. Specifically, the Settlement Agreements establishes a $19,999,400 Settlement Fund to pay for the valid claims submitted by Class Members, as well as the costs of notice, administrative expenses, incentive awards, and attorneys' fees. Each Class Member who submits a valid Claim Form will receive up to a $200 cash settlement payment. While the results of the Settlement on their face fall well "within the range of possible approval" necessary to grant preliminary approval, the Settlement also mirrors similar settlements that have received final approval in this District, as well as in Florida and California federal courts. Plaintiff thus moves the Court to preliminarily approve the instant Settlement Agreement, certify the proposed class, and appoint Myles McGuire, Jay Edelson, and Ryan D. Andrews of Edelson McGuire, LLC as Class Counsel. For convenience, proposed dates and deadlines leading to a final approval hearing are provided in the proposed order separately submitted to the Court.

## II.    NATURE OF THE LITIGATION

### A.    Plaintiffs' Allegations & the Litigation History

The instant Settlement encompasses two related class actions pending in this District. On August 4, 2010, Sheila Fahey instituted the Related Action claiming that CEC sent her and a proposed class of consumers a text message advertisement in violation of the TCPA. Fahey filed her class action in the Circuit Court of Cook County, which was subsequently removed by CEC and assigned to the Honorable James B. Zagel as Case No. 10-cv-05635. On November 22,

2010, CEC filed a Motion to Dismiss pursuant to Federal Rule 12(b)(1) claiming the Related Action had been mooted by an individual offer of settlement, which was the subject of an evidentiary hearing, made prior to Fahey filing her motion for class certification. After briefing on the motion, the Court entered an order staying the Related Action pending the result of the appeal in *Damasco v. Clearwire Corp.*, No. 10-cv-3063 (N.D. Ill. 2010), appeal docketed 10-3934 (7th Cir. 2010). On November 18, 2011, the Seventh Circuit issued its opinion in *Damasco*, but Judge Zagel has yet to issue a ruling on the Motion to Dismiss in the Related Action.

On August 19, 2010, Plaintiff Rojas filed this class action against CEC. (Dkt. 1.) In his Complaint, Rojas similarly alleged that on August 27, 2008, CEC violated the TCPA by promoting its for-profit educational services through unsolicited text messages to the cellular phones of consumers nationwide. (*See* Dkt. 1.) Immediately following the filing of his complaint, Rojas filed his motion for class certification. (Dkt. 2.) On October 15, 2010, CEC filed its Answer to Rojas's Complaint, denying the substance of the allegations and setting forth numerous affirmative defenses. (Dkt. 16.) On November 17, 2010, Plaintiff Rojas filed a motion seeking to consolidate the *Rojas* and *Fahey* matters. (Dkt. 21.) The Court denied this motion on February 9, 2011. (Dkt. 30.) The Parties then engaged in class certification and merits-based discovery, propounding and responding to several sets of written discovery and scheduling the depositions of key figures central to the litigation. (*See* Declaration of Ryan D. Andrews ("Andrews Decl.") ¶ 2, a true and accurate copy of which is attached as Exhibit 2.) It was at this juncture that the Parties agreed to attempt to resolve both this litigation and the Related Action through private mediation with Judge Andersen. (Dkt. 38; Andrews Decl. ¶ 2.)

3

### B.     Settlement Discussions and Private Mediation

On October 18, 2011, proposed Class Counsel, along with Defendant's counsel, and in-house counsel for CEC, met for a formal mediation with Judge Andersen.  Through this mediation the Parties made substantial progress toward reaching a settlement, but certain issues nevertheless remained unresolved.  (Andrews Decl. ¶ 3.)  The Parties attempted to resolve the outstanding issues through the exchange of draft settlement documents, but ultimately reached an impasse on key provisions.  (Andrews Decl. ¶ 4.)  Before returning to litigation, the Parties agreed to engage in a second mediation with Judge Andersen, which took place on January 20, 2012.  (Andrews Decl. ¶ 5.)  Through this subsequent mediation the Parties were able to reach an agreement in principle on the remaining areas of dispute.  (Andrews Decl. ¶ 5.)  In the months that followed, the Parties completed the negotiation of the language of the settlement, resulting in the Settlement Agreement of which Plaintiff seeks preliminary approval.  (Andrews Decl. ¶ 6.)

### III.    TERMS OF THE SETTLEMENT

The terms of the settlement are summarized briefly below, and are set forth in their entirety in the Settlement Agreement attached as Exhibit 1:

### A.     Class Definition. The "Settlement Class" is defined as all Persons Nationwide

who on August 27, 2008 were sent a text message from short code "21021" that stated either of the following:

- IMAGINE HAVING A JOB U LUV! CREATIVES DO SO CAN U. REPLY WITH "Y" TO LEARN MORE ABOUT THE ACADEMY. BY CEC. STD / OTHER CHARGES MAY APPLY. STOP 2 END

- IMAGINE A JOB WHERE U CAN USE UR IMAGINATION AND GET PAID 4 IT! REPLY Y TO HEAR HOW U CAN BEGIN 2 EARN UR DEGREE TODAY! BY CEC. STD OTH CHGS APPLY. STOP 2 END

(Agreement ¶¶ Recital A, ¶ 1.37.)

4

**B.      Monetary Relief.**  CEC has agreed to provide $200 settlement payments to each Class Member who submits a valid Claim Form, to be paid from a $19,999,400 million Settlement Fund.  If the total amount required to pay each Approved Claim would exceed the amount in the Settlement Fund after payment of Settlement Administration Expenses, the Fee Award to proposed Class Counsel, and the incentive award to the Class Representatives, then each Settlement Class Member with an Approved Claim shall receive a *pro rata* share of the amount of the Settlement Fund remaining after payment of such amounts.  (Agreement ¶¶ 1.39, 2.1.)

**C.      Additional Relief.**  In addition to the individual relief to the Settlement Class provided above, CEC has also agreed to provide the following additional relief:

**1.      Injunctive Relief:**  CEC has consented to the entry of an injunction for a term of two years prohibiting it, or any company with whom it contracts, from advertising the purchase or sale of CEC's educational goods and services via text messages, unless each potential recipient has given explicit consent prior to the receipt of any such messages.  In addition, CEC has agreed to maintain documented proof of all prior express consent for a period of four years after receipt.  (Agreement ¶ 2.2.)

**2.      Payment of Notice and Settlement Administrative Expenses:**  Defendant has agreed to pay, from the Settlement Fund, the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the settlement.  (Agreement ¶ 1.39.)

**3.      Incentive Award for Class Representatives:**  In addition to the relief received as Class Members under the settlement, and in recognition of their efforts on behalf of the Settlement Class, CEC has agreed to pay the two Class Representatives and three Potential

5

Plaintiffs, subject to Court approval, a collective award of $30,000 to be paid from the

Settlement Fund as appropriate compensation for their time and effort serving as the class

representatives and parties to this Action and the Related Action.  CEC will not oppose any

request limited to this amount.  (Agreement ¶¶ 1.39, 8.3.)

   **4.**  **Payment of Attorneys' Fees and Expenses:** Under the Agreement, CEC

has agreed to pay proposed Class Counsel reasonable attorneys' fees and to reimburse expenses

in this Action and the Related Action, in an amount to be determined by this Court.  Proposed

Class Counsel has agreed to limit its request for a Fee Award, with no consideration by CEC, to

an amount of up to one-third of the Settlement Fund.  Defendant will be entitled to oppose the

amounts claimed by Class Counsel and the basis for determining those amounts under applicable

law.[4]  (*See* Agreement ¶¶ 1.39 & 8.1-8.2.)

  **D.**  **Release of Liability.**  In exchange for the relief described above, CEC, and each

of its related and affiliated entities, will receive a full release of all claims related to the

transmission of text messages advertising and promoting its for-profit colleges and other

postsecondary schools to the above-defined Settlement Class.  (*See* Agreement ¶¶ 1.29-1.31, 3.1-

3.2 for a description of the complete release language.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

  The first step in granting preliminary approval of a class action settlement is for the Court

to determine that the proposed settlement class may properly be certified.  *Manual for Complex

Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  A party

seeking class certification must satisfy the factors enumerated in Federal Rule of Civil Procedure

---

[4] Proposed Class Counsel and CEC's Counsel have discussed the possibility of attempting to resolve the issue of the amount of the Fee Award prior to the final approval hearing with the assistance of Judge Andersen.

23(a) by demonstrating that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008); *Harper v. Sheriff of Cook Co.,* 581 F.3d 511, 513 (7th Cir. 2009).

In addition to satisfying the prerequisites of Rule 23(a), a plaintiff must also demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Harper*, 581 F.3d at 513. In the instant matter, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3). Certification under this provision requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. *See Amchem*, 521 U.S. at 615-16; *Pella Corp. v. Saltzman,* 606 F.3d 391, 393 (7th Cir. 2010) *cert. denied,* 131 S. Ct. 998 (U.S. 2011). Ultimately, district courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 340 (N.D. Ill. 2010). As discussed in detail below, this Court should grant preliminary approval to the proposed Settlement Agreement, as it meets each of the prerequisites governed by Rule 23.

### A.      There is a Sufficiently Numerous and Ascertainable Class

Numerosity exits where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010). A "definiteness" requirement has also been read into the requirements of Rule

23(a) and is satisfied where the proposed class "members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." *Hinman v. M and M Rental Cen., Inc.* 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008); *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 146 (N.D. Ill. 2010). The proposed Settlement Class here consists of 99,997 cellular phone customers to whom the text messages at issue were transmitted. (Agreement ¶¶ Recital A, 4.2(a).) As set forth in § VII, *infra*, the Parties have obtained, through discovery, a list of the 99,997 unique cellular phone numbers to which the text messages at issue were sent, thus rendering the proposed Settlement Class readily ascertainable. Given both the substantial size and ascertainability of the proposed class, the numerosity requirement is easily satisfied.

### B.    The Requirement of Commonality is Satisfied

The second requirement of class certification requires that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). Commonality may be demonstrated when the claims of all class members "depend upon a common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551, 2556 (2011). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992)). The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 131 S.Ct. at 2545. While commonality typically exists where a defendant has engaged in standardized conduct towards members of the proposed class, it also requires a plaintiff to show that such conduct has caused class members to suffer the same injury. *Hinman v. M & M Rental*

*Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008); *Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012).

In this case, all members of the proposed Settlement Class share a common claim arising out of the same alleged activity—the transmission of identical text message advertisements to their cellular phones promoting CEC's educational programs without their prior express consent. This common nucleus of factual allegations results in the class sharing a common statutory TCPA claim that shares factual and legal questions such as: (1) whether the equipment used to send the allegedly offending messages was an "automatic telephone dialing system" ("ATDS"); (2) whether CEC or its agents received and maintained proof of prior express consent to receive text messages from members the class; (3) whether Settlement Class Members are entitled to uniform statutory damages under the TCPA as a result of CEC's conduct; and (4) whether those damages should be trebled due to the alleged willfulness of the conduct. The determination of these factual and legal issues would resolve the claims of all class members in one stroke. Considering the common nature of the issues and facts that bind the class together, the element of commonality is satisfied.

### C.  The Requirement of Typicality is Satisfied

The third element of Rule 23(a), typicality, directs courts to "focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 336 (N.D. Ill. 2006) (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993)). Typicality and commonality are closely related, given that typicality exists where the claims of the named plaintiff arise from the same event or course of conduct that, in turn, gives rise to the claims of other class members, and where those claims are based on the same legal theory. *Wright-Gray v.*

*Hamos*, 09 C 04414, 2012 WL 366597, *9 (N.D. Ill. Feb. 2, 2012); *Brieger v. Tellabs, Inc.*, 245

F.R.D. 345, 350 (N.D. Ill. 2007). However, typicality is to be liberally construed, and the claims

of the named plaintiff and the class members need not be identical. *Ross v. RBS Citizens, N.A.*,

09 CV 5695, 2010 WL 3980113, *3 (N.D. Ill. Oct. 8, 2010) *aff'd*, 667 F.3d 900 (7th Cir. 2012).

In instances where a defendant's conduct consisted of sending unsolicited advertisements, either

by text message or fax in violation of the TCPA, courts have found that the requirement of

typicality is met. *See, e.g., CE Design v. Beaty Const., Inc.,* 07 C 3340, 2009 WL 192481, *5

(N.D. Ill. Jan. 26, 2009); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 141 (N.D.

Ill. 2009); *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909, *5 (N.D. Ill. Oct. 14, 2009).

In the instant matter, allegedly unauthorized text messages were sent to Plaintiffs Rojas

and Fahey, as well as the proposed Settlement Class, promoting CEC's educational services. As

a result, Plaintiffs and the proposed Settlement Class have all alleged that this conduct violated

the TCPA and that all members are entitled to identical statutory relief. Therefore, Plaintiffs

Rojas' and Fahey's claims for relief under the TCPA are typical of, if not wholly identical to,

those of the proposed Settlement Class, and Rule 23(a)(3)'s requirement for typicality is met.

### D. The Requirement of Adequate Representation is Satisfied

Rule 23(a)'s final prerequisite requires that the representative parties have, and will

continue to, "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The element of adequacy is divided into two inquiries, considering both "the adequacy of the

named plaintiff's counsel, and the adequacy of representation provided in protecting the

different, separate, and distinct interest" of the class members. *Retired Chicago Police Ass'n.*, 7

F.3d at 598. Ultimately, this inquiry "serves to uncover conflicts of interest between named

parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.

A named plaintiff will adequately represent the proposed class where they have a sufficient stake in the outcome "to ensure zealous advocacy" and where their claims are not "antagonistic to or conflicting with the claims of other class members." *Vodak v. City of Chicago*, 03 C 2463, 2006 WL 1037151, *6 (N.D. Ill. Apr. 17, 2006); *Hinman*, 545 F. Supp. 2d at 807. A representative plaintiff who "possess[es] the same interest and suffer[ed] the same injury as the class members" will likely pursue the interests of the class. *Vodak,* 2006 WL 1037151 at *6.

Plaintiffs Rojas and Fahey and the Settlement Class Members were all allegedly sent unauthorized text message advertisements promoting CEC. Thus, Plaintiffs Rojas' and Fahey's interests are entirely representative of and consistent with the interests of the Settlement Class. *See CE Design*, 2009 WL 192481, *5 (claims of named plaintiff and proposed class were "based upon the same legal theory, *i.e.* violation of the TCPA," where defendant sent unsolicited advertisements to both). In addition, Plaintiff Fahey's pursuit of this matter to date—after rejecting CEC's individual offer of settlement—has demonstrated that she has put the Settlement Class' interests above her own and will continue to be zealous advocate for the Settlement Class. Thus, Plaintiffs' interests in obtaining statutory monetary and injunctive relief from CEC for the alleged transmission of the text messages in violation of the TCPA are parallel to and representative of the interests of the Settlement Class as a whole in satisfaction of the first prong of the adequacy analysis.

The second prong of the adequacy requirement is concerned with the "competency and conflicts of class counsel." *In re AT&T,* 270 F.R.D. at 343-44. Courts have found it to be persuasive evidence where class counsel has been deemed adequate to serve as class counsel in other cases. *Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168

(N.D. Ill. Aug. 30, 2005). Proposed Class Counsel have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits, especially those related to telecommunications and the TCPA, that are similar in size, scope and complexity to the present case. (Andrews Decl. ¶ 7; *see Lozano v. Twentieth Century Fox Film Corp. et al.,* No. 09-CV-6344 (N.D. Ill.); *Weinstein, et al. v. The Timberland Company,* No. 06-cv-0454 (N.D. Ill.); *Kramer v. Autobytel Inc.,* No. 10-cv-02722-CW (N.D. Cal); *Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.); and *Espinal v. Burger King Corp. et al.*, No. 09-20982 (S.D. Fla.)). As such, Plaintiffs Rojas and Fahey and proposed Class Counsel will adequately represent the Class Members and their interests.

**E.     The Settlement Meets the Requirements of Rule 23(b)(3)**

In addition to the requirements enumerated in Rule 23(a), Plaintiffs must also demonstrate one of the three requirements of Rule 23(b). *Wal-Mart*, 131 S. Ct. at 2548. Pursuant to Rule 23(b)(3), a class action may be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of plaintiffs' claims. Fed. R. Civ. P. 23(b)(3).

**1.     <u>Common Questions of Law and Fact Predominate</u>**

The predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The requisite cohesiveness is present when common questions of law or fact, shared amongst the entire class, make "class-wide adjudication of the common questions efficient compared to repetitive individual litigation of the same questions." *Cotton v. Asset Acceptance, LLC*, 07 C 5005, 2008 WL 2561103, *5 (N.D. Ill. June 26, 2008) (quoting *Lemon v. Int'l Union of Operating Eng'g,*

*Local No. 139, AFL-CIO,* 216 F.3d 577, 581 (7th Cir. 2000)).  Common legal and factual issues are routinely found to predominate in cases where class members allege violations of the TCPA related to a defendant's conduct of transmitting unsolicited advertisements.  *See e.g. CE Design,* 2009 WL 192481, at *8-9 (finding that whether the plaintiffs received unsolicited faxes "is the singular question that predominates above all else").

In this case, the core factual and legal issues that predominate are whether the system used to transmit those messages was an ATDS, whether the requisite "prior express consent" to send the messages was obtained, and whether the alleged conduct was willfully conducted by CEC.  Thus, the answers to these common questions that resulted from CEC's alleged conduct are the primary focus and central issues in this class action and predominate over any individual issues or minor factual variances that may exist.

## 2. This Class Action is a Superior Method of Adjudication

Much like the requirement of predominance, the superiority requirement is satisfied where class members have uniform claims governed by the same law.  *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002)).  In cases where thousands of consumer class members have the same claim, the Seventh Circuit recognizes the superiority of class action settlements over individual actions:

> Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multi-state classes under state law, and society may gain from the deterrent effect of financial awards.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).  Also, because the action will now settle, the Court need not consider issues of manageability relating to trial.  *See Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 2708399, *6 (N.D. Ill. July 12, 2011) (citing

*Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial")).

This matter is especially suited for class-action status as the Plaintiffs and the proposed Class Members all allegedly suffered violations of the same federal statute. Absent a class action, members of the Settlement Class would likely be unwilling or unable to litigate their claims, given that—in the absence of treble damages awarded for a willful violation of the TCPA—each Class Member would be statutorily limited to an award of $500. Accordingly, this Court should approve certification of the proposed Settlement Class, as this class action represents a superior method of adjudication of Plaintiffs' claims.[5]

## V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Pursuant to Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). To make this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

---

[5] The Northern District of Illinois has routinely certified Class actions brought pursuant to the TCPA's analogous fax spam prohibitions. *See Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., LTD.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010) (certifying a class of consumers that were sent fax spam via a hired company in violation of an analogous provision of the TCPA); *Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (certifying a TCPA class of fax advertisement recipients); *see also G.M. Sign, Inc. v. Group C Communications, Inc.*, No. 08-cv-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (granting motion for class certification under the TCPA where defendant delivered unsolicited advertisements via facsimile).

As discussed in greater detail above, proposed Class Counsel have experience with similar class action litigation, and have been appointed class counsel in consumer class actions similar to the instant matter. (Andrews Decl. ¶ 7.) Further, proposed Class Counsel have diligently investigated and prosecuted this matter and the Related Action, dedicating substantial resources to the investigation of the claims at issue in both cases, and have successfully negotiated the settlement of these claims for the benefit of the Settlement Class. (*Id.* at 8.) Accordingly, the Court should appoint Myles McGuire, Jay Edelson, and Ryan D. Andrews, of Edelson McGuire, LLC as Class Counsel.

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Once a court has determined that the proposed class warrants certification, the court should preliminarily approve the settlement. The process of reviewing a proposed class action settlement consists of a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). First, courts conduct a pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39; *Armstrong*, 616 F.2d at 314. The purpose of this preliminary approval hearing is not to conduct a "fairness hearing," but rather "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314; *Newberg*, §11.25, at 38-39. This stage serves as an "initial evaluation" of the proposed settlement, taking into consideration the written submissions as well as the informal presentations provided by the settling parties. *Manual for Complex Litigation*, § 21.632 (4th ed. 2004). Upon determining that the settlement proposal is "within the range of

possible approval," the court then proceeds to the second step, a final approval hearing. *Newberg*, §11.25, at 38-39; *In re AT&T*, 270 F.R.D. at 346.

"Federal courts naturally favor the settlement of class action litigation." *In re AT&T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). Upon a finding that a proposed settlement is "fair, reasonable, and adequate," strong judicial and public policy favors the approval of such a settlement. *Isby*, 75 F.3d at 1198. In determining whether the proposed settlement is fair, reasonable and adequate, courts look to the following factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir.2006)). Though these factors are ultimately determined at the fairness hearing that follows preliminary approval of the proposed settlement, a summary version of the same inquiry also takes place at this phase of the approval process. *Kessler v. Am. Resorts Int'l,* 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314)). At this preliminary phase, applying the six-factor test to the instant case demonstrates that the proposed settlement is "fair, reasonable and adequate" and thus well within the range of approval.

The first factor, the strength of the plaintiff's case compared to the settlement offer, garners the most weight in this analysis and strongly favors approval of this settlement. *See Schulte*, 805 F. Supp. 2d at 578 (N.D. Ill. 2011). Courts should be mindful not to reject a settlement solely because it does not provide a complete victory, given that parties to a

settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347. Here, Plaintiffs Rojas and Fahey believe their claims for $500 statutory relief and an injunction under the TCPA to be strong, but are also cognizant of the risks inherent in moving forward with complex litigation of this nature—absent a settlement, the success of any of CEC's various legal defenses could deprive the Class Members of any potential relief whatsoever. Given this possible outcome, Plaintiffs view the monetary payment of $200 per class member from a $19,999,400 Settlement Fund, as well as the injunctive relief, to be an extraordinary result for the Settlement Class.

Under the second and third factors, in the absence of settlement it is certain that the expense, duration, and complexity of proceeding with litigation and trial preparation in this case would be substantial. Should this case proceed to trial, evidence and witnesses from across the country would need to be assembled. Further, given the complexity of the issues and the amount of money in controversy, the losing party would assuredly appeal any decision on class certification, a dispositive motion, or judgment at trial. As such, the immediate relief provided by the proposed Settlement weighs heavily in favor of approval, and avoids the inherent risks associated with complex litigation of this kind. (Andrews Decl. ¶¶ 9-10.)

In regard to the fifth factor,[6] proposed Class Counsel believe the proposed Settlement Agreement represents an extraordinary result for Class Members who will each receive an immediate payment of $200 upon submission of a valid Claim Form and injunctive relief designed to prevent similar conduct going forward. Proposed Class Counsel, based on their

---

[6] The fourth factor relevant to considering approval of a class action settlement is the amount of opposition to the settlement. Presently, there is no opposition to the settlement and, given the strength of this settlement, the Parties expect little or no opposition to the settlement by Class Members.

experience with similar cases, believe that the proposed settlement is clearly in the best interest of the Class Members as it provides substantial monetary recovery and injunctive relief immediately instead of having to wait for the litigation and appeals to run their course.

As for the final factor, the instant Settlement was not finalized until the Parties had completed sufficient discovery, until Rojas was on the verge of filing a comprehensive motion for class certification, and only after two full-day mediations with Judge Andersen. (Andrews Decl. ¶¶ 2-5.) As such, the Parties had more than sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and this factor weighs in favor of the preliminary fairness of the Settlement Agreement.

Finally, the Court need not rule on a blank slate as to the fairness, reasonableness, and adequacy of the instant settlement, as similar class actions have received final approval from numerous courts in this District and other federal districts throughout the country. *See Lozano v. Twentieth Century Fox Film Corp. et al.,* No. 09-CV-6344 (N.D. Ill.) (approving a settlement creating a $16 million settlement fund for the transmission of text messages to over 98,000 cellular phones, entitling each class member to a $200 settlement payment); *Weinstein v. The Timberland Co. et al.*, No. 06-cv-00484 (N.D. Ill.) (approving settlement creating a $7 million settlement fund for the transmission of 40,000 text messages entitling each class member to a $150 settlement payment); *Satterfield v. Simon & Schuster, Inc. et al.*, No. 06-cv-02893-CW (N.D. Cal.) (approving settlement creating a $10 million settlement fund for the transmission of 59,000 text messages entitling each class member to a $175 settlement payment). *Kramer v. Autobytel Inc.,* No. 10-cv-02722-CW (N.D. Cal) (approving a settlement creating a $12,200,000 million settlement fund for transmission of text messages to over 40 million cellular phones, entitling class members to a $100 settlement payment). Based on its terms, and as compared to

the other settlements mentioned above, this result is fair, reasonable, and adequate, and thus

warrants Court approval.

## VII.    THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the

court must direct to class members the best notice practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ.

P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Rule 23(e)(1) similarly

provides that "[t]he court must direct notice in a reasonable manner to all class members who

would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P.

23(e)(1).  Notice is "adequate if it may be understood by the average class member." NEWBERG,

§ 11:53 at 167.  The substance of the notice to the settlement class must describe in plain

language the nature of the action, the definition of the class to be certified, the class claims and

defenses at issue, that settlement class members may enter an appearance through counsel if so

desired, that class members may request to be excluded from the settlement class, and that the

effect of a class judgment shall be binding on all class members.  *See* Fed. R. Civ. P. 23

(c)(2)(B).

To ensure that notice of the Settlement Agreement satisfies the requirements of Rule 23

and Due Process, the Parties engaged experienced class action administrator The Garden City

Group, Inc. ("GCG") to develop and implement a multi-part notice plan.  (*See* Declaration of

Jeanne C. Finegan, APR, ¶¶ 1-5, 33, a true and accurate copy of which is attached hereto as

Exhibit 3.)  First, direct notice will be provided to all Class Members that were identified after

substantial effort from a list of the 99,997 unique cellular telephone numbers to which the text

message advertisements were transmitted that was obtained by the Parties in discovery.  (Finegan

Decl. ¶¶ 7, 9; Agreement § 4.2(a).)  Through a combination of using customer data provided by the relevant wireless carriers and a reverse cellular phone number look-up searches, GCG obtained 85,738 U.S. Mail addresses and 24,468 email address of potential Settlement Class Members.[7]  (Finegan Decl. ¶¶ 9-13.)  GCG will send to each of these addresses, via First Class U.S. Mail and email respectively, a summary notice describing the terms of the Settlement and an accompanying claim form with return postage prepaid.  (Finegan Decl. ¶¶ 15-19; Agreement § 4.2 (a)-(b).)

Second, the settlement administrator will establish a website at www.CareerTextSettlement.net serving as the "long-form" notice.  (Finegan Decl. ¶ 30; Agreement § 4.2(e).)  The settlement website will contain relevant court documents, will provide answers to frequently asked questions, will provide contact information for GCG's toll-free hot-line as well as a toll-free number to reach proposed Class Counsel, and will provide for the online submission of claims.  (Finegan Decl. ¶¶ 30-31.)

Finally, to promote the settlement website to potential Class Members, GCG will purchase targeted on-line advertising on the *24/7 Network*, *Univision*, and *Facebook*, place a half-page print ad containing a summary of the Settlement in *People Magazine*, and distribute an agreed-upon press release announcing the settlement to *PR Newswire*'s English and Hispanic news lines.  (Finegan Decl. ¶¶ 26-28; Agreement § 4.2(c)(d) & (f).) The proposed notices and claim form are attached as Exhibits A-D to the Agreement and the Finegan Declaration and should be approved by the Court.  In sum, this Court should find that the proposed methods for providing Notice to the Settlement Class comport with both Rule 23 and Due Process.

---

[7] Verizon wireless has indicated that it will be providing customer data within the next thirty (30) days.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court: (1) certify the Settlement Class; (2) appoint Sergio Rojas and Sheila Fahey as the Class Representatives; (3) appoint Myles McGuire, Jay Edelson, and Ryan D. Andrews as Class Counsel; (4) preliminarily approve the proposed Settlement Agreement; (5) approve the form and methods of notice; (6) and grant such further relief as the Court deems reasonable and just.  A proposed preliminary schedule leading to final approval is contained in the Proposed Order separately submitted to the Court.


Dated: June 19, 2012                                  Respectfully Submitted,

                                                      SERGIO ROJAS
                                                      individually and on behalf of a
                                                      class of similarly situated individuals,

                                                       /s/ Ryan D. Andrews

                                                      Ryan D. Andrews
                                                      Edelson McGuire, LLC
                                                      350 North LaSalle Street, Suite 1300
                                                      Chicago, Illinois 60654
                                                      Telephone: 312.589.6370
                                                      Facsimile: 312.589.6378
                                                      randrews@edelson.com

## CERTIFICATE OF SERVICE

I, Ryan D. Andrews, an attorney, certify that on June 19, 2012, I served the above and foregoing *Plaintiff's Uncontested Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement* by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system.

Christopher B. Wilson
Patrick M. Collins
Debra Rae Bernard
Perkins Coie, LLC
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8603
Facsimile: 312.324.9603
cwilson@perkinscoie.com
pcollins@perkinscoie.com
dbernard@perkinscoie.com


_____/s/_Ryan D. Andrews_____
Ryan D. Andrews

22